IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 9109 |
| v. | ) | |
| | ) | Judge Jorge Alonso |
| IMHOTEP CARTER, SALEH OBAISI, | ) | |
| LA TANYA WILLIAMS, WENDY OLSEN, | ) | |
| BRENDA THIGPEN, ANGELIQUE LIPE, | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| STATEVILLE CORRECTIONAL | ) | |
| CENTER, DARRYL EDWARDS, | ) | |
| DARRYL COLEMAN, GLADYSE | ) | |
| TAYLOR[1], UNKNOWN ILLINOIS | ) | |
| DEPARTMENT OF CORRECTIONS | ) | |
| EMPLOYEES, and UNKNOWN | ) | |
| WEXFORD HEALTH SOURCES, INC. | ) | |
| EMPLOYEES, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff, David Wright, who is incarcerated in Stateville Correctional Center ("Stateville"), brings this action against defendants, Wexford Health Sources, Inc. ("Wexford") and certain employees and officers of either Wexford or the Illinois Department of Corrections ("IDOC"). Plaintiff claims that defendants violated his Eighth Amendment rights and are liable to him under 42 U.S.C. § 1983 for refusing to provide medical care, conspiring to deny medical care, and failing to intervene in the denial of medical care. Defendants have moved, in two separate motions, to dismiss for failure to state a claim under Federal Rule of Civil Procedure

---

[1] The Second Amended Complaint originally named S.A. Godinez as a defendant in his official capacity as Director of the Illinois Department of Corrections ("IDOC"), but Gladyse Taylor has since replaced Godinez as Director. Taylor must therefore be substituted for Godinez, in accordance with Federal Rule of Civil Procedure 25(d).

12(b)(6). For the following reasons, the defendants' motions are granted in part and denied in part.

## BACKGROUND

Plaintiff alleges that, on June 21, 2011, he broke his hand when he slipped and fell while walking from the showers to his housing unit at Stateville. (Second Am. Compl. ¶ 2.) Plaintiff sought medical care for his injury numerous times over nearly three years, but none of the defendants provided adequate medical care or took any steps to ensure that plaintiff received adequate medical care.

Plaintiff submitted his first formal request for medical care on the day of his injury, and, on the next day, he reported his injury to defendant Wendy Olsen[2] while she was administering medications to prisoners in plaintiff's housing unit. (*Id*. ¶¶ 20-21.) Plaintiff alleges that he showed Olsen his hand, which had swollen to more than double its normal size, and Olsen told him that she would get his name and IDOC number as soon as she had finished her task, but she did not return. (*Id.* ¶ 21.)

The next day, plaintiff submitted another request for medical care, and he reported his injury to defendant Brenda Thigpen while she was administering medications to prisoners. (*Id.* ¶¶ 22-23.) He showed her his still-swollen hand, but instead of offering him any treatment, she told him, "that's not my job," and advised him to submit a request for treatment. (*Id.* ¶ 23.) When plaintiff responded that he had already submitted two requests, she shrugged her shoulders and walked away. (*Id.*)

Over the next week, plaintiff complained to defendant Thigpen three more times about his injured and swollen hand and asked to be placed on sick call to be seen by medical personnel,

---

[2] Although the Second Amended Complaint refers to "Wendy Olsen," subsequent documents refer to her as "Wendy Olsen Foxon" or "Wendy Olsen-Foxon." In this Order, for consistency with the Second Amended Complaint, the Court will use the name "Olsen."

but defendant Thigpen did not place him on the sick call or take any other action to ensure that he was evaluated or treated by any medical personnel. (*Id.* ¶ 24.) On June 29, 2011, plaintiff submitted a third request for medical care, in which he described his conversations with Thigpen. (*Id.* ¶ 25.)

On June 30, 2011, plaintiff showed his injured hand to another certified medical technician who was administering medication in his housing unit and asked her to put him on the sick call. (*Id.* ¶ 26.) She agreed to do so, and on July 5, 2011, plaintiff was taken to the prison healthcare unit. (*Id.* ¶¶ 26-27.) However, defendant Angelique Lipe told plaintiff that he was not "on the list to see any physician that day," and she refused to allow him to see any medical personnel. (*Id.* ¶ 27.) When plaintiff told Lipe[3] about his injury and his pain, she asked him to hold up his hands in front of him and push on her hands, which he did. (*Id.*) She told him that his hand was not broken, and she gave him some Tylenol and analgesic balm, but she performed no further evaluation and provided no further treatment. (*Id.*) Plaintiff saw no other medical personnel, although he alleges that defendant Imhotep Carter was present in the healthcare unit that day, and he heard plaintiff complaining about his pain, but he did nothing. (*Id.*) The Tylenol and analgesic balm did not reduce the swelling in plaintiff's hand or alleviate his pain. (*Id.*)

On July 15, 2011, plaintiff spoke to defendant Olsen while she was administering medication. (*Id.* ¶ 29.) He told her about his hand and asked for medical care. Olsen only told plaintiff to speak to another certified medical technician. (*Id.*) Plaintiff showed his hand to another certified medical technician that same day, and she told him that the hand "was in bad

---

[3] The Second Amended Complaint refers to Lipe as "Angelique," apparently because her last name was not known at the time the complaint was drafted. Subsequently-filed documents refer to her as "Angelique Lipe" (*see* Mot. to Join Pending Mot. to Dismiss, ECF No. 57), and in this Order the Court will refer to her by her last name.

shape." (*Id.* ¶ 30.) She told him that she would put him on the list for sick call on her next work day. (*Id.*) On July 18, 2011, plaintiff submitted another request for medical care. (*Id.* ¶ 31.)

On July 19, 2011, while en route to a legal visit, plaintiff encountered defendant Darryl Coleman. (*Id.* ¶ 32.) He told him about his injured hand, described his pain and recounted his many failed attempts to obtain medical care for the injury. (*Id.*) Coleman told plaintiff that he would tell defendant Darryl Edwards what plaintiff had told him. (*Id.*) Neither Coleman nor Edwards apparently took any further action to see that plaintiff received treatment for his injury.

On July 28, 2011, plaintiff saw defendant La Tanya Williams in the healthcare unit at Stateville. (*Id.* ¶ 33.) He showed her his still-swollen hand and described his injury and pain. (*Id.*) Williams scheduled plaintiff for an X-ray and gave him Tylenol, but she did not consult with a doctor or allow plaintiff to see a doctor. (*Id.*) Plaintiff alleges that the X-ray results showed that his hand was indeed broken, but no one immediately told plaintiff of the results or provided any follow-up evaluation or treatment. (*Id.* ¶ 34.)

On September 10, 2011, plaintiff submitted another request to be seen by medical personnel, stating that his hand was still swollen and he had never been told of the results of his X-ray. (*Id.* ¶ 36.) On October 15, 2011 and January 5, 2012, he submitted additional requests, repeating the same complaints. (*Id.* ¶¶ 37-38.)

On April 16, 2012, plaintiff had another X-ray taken of his right hand, and again the X-ray showed that his hand was broken. (*Id.* ¶ 39.) While in the healthcare unit, plaintiff saw defendant Williams, and he asked her the results of his first X-ray. (*Id.*) She responded that this hand was broken, and she gave him some Aleve and told him to soak his hand in warm water. (*Id.*) She provided no further treatment, nor did she arrange for plaintiff to see other medical personnel. (*Id.*)

Plaintiff did not see medical personnel again for more than a year, although he continued to complain about his pain. (*Id.* ¶ 40.) He saw defendant Williams again on July 11, 2013, and he told her that his injury persisted, but she provided no medical evaluation or treatment. (*Id.* ¶ 41.) When he saw her again on October 16, 2013, she prescribed an increase in defendant's water intake. (*Id.* ¶ 42.) Plaintiff's condition did not improve. (*Id.*)

On April 17, 2014, plaintiff saw defendant Saleh Obaisi and told him of his injury. (*Id.* ¶ 43.) Without examining plaintiff or reviewing his records, Dr. Obaisi told plaintiff that he had tendonitis and prescribed a cortisone shot. (*Id.*) Plaintiff tried to tell Dr. Obaisi that he had a broken hand, but Dr. Obaisi refused to examine him further. (*Id.*)

Plaintiff alleges that he never received any adequate treatment for his broken hand, and his pain persists to this day. (*Id.* ¶ 44.)

Plaintiff's Second Amended Complaint consists of five counts. In Counts I through III, plaintiff seeks relief for denial of medical care, conspiracy to deny medical care, and failing to intervene in the denial of medical care, in violation of the Eighth Amendment and 42 U.S.C. § 1983. In Count IV, plaintiff alleges that Wexford, a private entity that contracts with the state of Illinois to provide medical care to prisoners in IDOC institutions, should be held vicariously liable under § 1983 for the conduct of its employees. In Count V, plaintiff alleges that the state of Illinois is required by state law to indemnify state employees, including an unspecified number of the defendants, for any judgment they become liable to pay due to misconduct they committed while acting within the scope of their employment.

Defendants have filed two separate motions to dismiss. Defendants Wexford, Williams, Carter, Lipe and Obaisi[4] (collectively, "the Wexford defendants") move to dismiss Counts II and

---

[4] Originally, the motion was filed only on behalf of Wexford, Williams and Carter, but Lipe and Obaisi later sought—and were granted—leave to join the motion.

IV, contending that plaintiff fails to state a claim for conspiracy and there is no vicarious liability under § 1983. Defendants Edwards, Coleman, Taylor, Thigpen and Olsen[5] (collectively, "the IDOC defendants"), represented by different counsel, move to dismiss Count I as to the IDOC defendants sued in their individual capacity because the Second Amended Complaint does not allege that they were personally involved in the constitutional violation; Count II because plaintiff fails to state a claim for conspiracy; Count III because plaintiff fails to state a claim for failure to intervene; and Count V because it is barred by state sovereign immunity.

## ANALYSIS

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility

---

5 This motion was originally filed only on behalf of defendants Edwards, Coleman and Godinez (the former director of IDOC, since replaced by Gladyse Taylor), but defendants Olsen and Thigpen later sought leave to join the pending motion. Plaintiff, who had already filed his response brief, did not oppose the motion to join so long as he was permitted to file a supplementary response brief to address how his arguments applied to Olsen and Thigpen. The Court granted both the motion to join and the plaintiff's motion to supplement his response.

6

standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

## I. COUNT I: DENIAL OF MEDICAL CARE

Defendants Coleman, Edwards, Thigpen and Olsen contend that plaintiff fails to allege that they were personally involved in the wrongful denial of medical care described in Count I.

"Section 1983 creates a cause of action against any person who, under color of state law, 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Blossom v. Dart*, 64 F. Supp. 3d 1158, 1161 (N.D. Ill. 2014) (quoting 42 U.S.C. § 1983). The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97 (1976). An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). To state a § 1983 claim against an individual in his personal capacity, plaintiff must allege that the individual was personally involved in the alleged constitutional deprivation. *Palmer v. Marion Cnty.*, 327 F.3d 588, 593-94 (7th Cir. 2003).

### A. Coleman and Edwards

Plaintiff alleges that, within a day of his injury on June 21, 2011, his hand had swelled up to "more than double its normal size" (Second Am. Compl. ¶ 21); on July 15, 2011, a certified medical technician told him that his hand still appeared to be "in bad shape" (*id.* ¶ 30); his hand was still swollen when it was X-rayed on July 28, 2011 (*id.* ¶¶ 33-34); and it remained "severely

swollen" at least into September 2011 (*id.* ¶ 36). According to these allegations, plaintiff's hand was visibly swollen when he spoke to defendant Coleman on July 19, 2011 and described his failed attempts to obtain treatment, but defendant Coleman "refused to provide Mr. Wright access to medical care," and instead "told Mr. Wright that he would tell Defendant Edwards about his situation." (*Id.* ¶ 32.) It is a plausible inference that Coleman did tell Edwards about plaintiff's inability to obtain medical care for his hand, and neither Coleman nor Edwards took any action on plaintiff's behalf. These allegations state a claim for deliberate indifference to plaintiff's serious medical needs.

Coleman and Edwards contend that, "as it is clear that Plaintiff was being seen by medical professionals, and was subsequently seen by medical staff for his concerns, Coleman and Edwards were justified in believing that Plaintiff was in capable hands." (IDOC Defs.' Mot. to Dismiss at 3.) This either mischaracterizes plaintiff's allegations or denies them, which is improper in a motion to dismiss. Plaintiff's complaint may be fairly read to allege that, at the time of plaintiff's conversation with Coleman, various certified medical technicians were consistently refusing to let plaintiff see a doctor, his injury had been treated only with "Tylenol and analgesic balm," which "did nothing to reduce the [severe] swelling" (Second Am. Compl. ¶¶ 27, 29), he had been in pain for nearly a month, and, despite knowing all this, Coleman and Edwards took no action to see that he received appropriate medical attention, nor was plaintiff able even to speak with a doctor until years later.

These allegations are more than sufficient to state a claim that Coleman and Edwards were personally involved in a denial of medical care. Coleman and Edwards are free to take the position that, contrary to the allegations of the complaint, they reasonably believed that plaintiff's medical needs were being addressed by medical personnel, but that has nothing to do

with whether, assuming the truth of plaintiff's allegations, he states a claim for relief. He has done so.

### B. Olsen and Thigpen

It is even clearer that Olsen and Thigpen were personally involved in the constitutional deprivation. Olsen and Thigpen are certified medical technicians, and plaintiff complained to each of them personally, showed them his swollen hand, and requested help from each of them on multiple occasions, to no avail. (Second Am. Compl. ¶¶ 21, 23-34, 29.) Count I survives defendants' motion to dismiss.

## II. COUNT II: CONSPIRACY

All defendants move to dismiss Count II for failure to state a claim of conspiracy, contending that plaintiff does not plead any facts that might support a reasonable inference of any agreement among defendants to deprive plaintiff of his constitutional rights. According to defendants, plaintiff's allegations describe only various discrete attempts to obtain medical care for his hand, and there are no facts to link plaintiff's various interactions with the defendants together or tie the defendants to any agreement to withhold medical care. In short, plaintiff makes only a bald, bare allegation of conspiracy, unsupported by specific factual allegations.

Plaintiff argues in his response brief that even a complaint that makes only "rather conclusory direct allegations of conspiracy" may survive a motion to dismiss by alleging a "pattern" of misconduct "by several [individuals] over a period of months," citing *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). According to the allegations of the complaint, Wexford and IDOC employees repeatedly refused plaintiff's requests for medical care for his broken hand, despite severe swelling that would have made the need for treatment obvious even to a layperson. Thus, plaintiff contends that, like the plaintiff in *Geinosky*, he has

9

alleged that numerous individuals who work together at Stateville all "acted in the same inexplicable way against . . . plaintiff on many different occasions," and the "obvious suggestion of collusion" in such allegations is sufficient to support a reasonable inference of a conspiracy. 675 F.3d at 749.

The Court is not persuaded. *Geinosky* may seem similar at first blush, but the facts of this case are not as extreme as in *Geinosky*, in which numerous police officers in the same unit inexplicably gave the plaintiff 24 patently bogus parking tickets, some of which were inconsistent with others received at the same time, or were suspiciously given at exactly 10 p.m., or cited locations on desolate stretches of the South Side that the plaintiff swore he had never visited and where legal parking was readily available. *Id.* at 745 (citing Jon Yates, *Problem Solver*: *Police cite 3 officers over fake tickets; man vindicated,* Chicago Tribune, (Nov. 7, 2011), http://articles.chicagotribune.com/2011-11-07/business/ct-biz-1107-problem-geinosky-20111107_1_horst-hegewald-paul-roque-steven-sabatino). Even though Geinosky could allege no clear, fact-supported motive for the conspiracy, the Seventh Circuit concluded that "[i]t is a challenge to imagine a scenario in which that harassment would not have been the product of a conspiracy."

In this case, while each individual defendant may be alleged to have behaved "inexplicably" in the sense there can be no reasonable explanation for failing to provide medical care for an obvious injury, conspiracy is hardly the only logical explanation for the alleged misconduct. The plaintiff's allegations are "consistent with conspiracy, but just as much in line" with a series of individual acts of incompetence, laziness, or gross negligence, *see Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009) (citing *Twombly*, 550 U.S. at 554). An inference of conspiracy is possible, but not plausible, because plaintiff has not provided enough factual detail

to raise his "right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Count II is dismissed.

## III. COUNT III: FAILURE TO INTERVENE

The IDOC defendants contend that plaintiff does not state a claim that they failed to intervene in the denial of medical care because he does not allege that they personally knew that anyone was violating plaintiff's constitutional rights or that they had any realistic opportunity to prevent the constitutional deprivation from happening. *See Fillmore v. Page*, 358 F.3d 496, 505-06 (7th Cir. 2004).

This contention is meritless for the reasons stated above in connection with Count I. Plaintiff alleges that he showed his hand to defendant Coleman and told him that he had been unable to obtain medical care despite his specific written requests and face-to-face requests to other defendants, Coleman responded only that he would tell Edwards, and neither took any further action. Thus, Coleman and Edwards allegedly knew that other Wexford or IDOC employees at Stateville were refusing to provide medical care for plaintiff's injury, and they took no action to see that plaintiff received the required medical attention. Additionally, plaintiff alleges that he sought medical care for his injury from Thigpen and Olsen, who knew that previous requests for care had been ignored, and they did not take steps to see that plaintiff received the required medical attention. All four of these defendants knew about ongoing constitutional violations and failed to act. Count III survives defendants' motion to dismiss.

## IV. COUNT IV: RESPONDEAT SUPERIOR

Wexford contends that Count IV must be dismissed because a private corporation cannot be held vicariously liable under § 1983, citing *Shields v. Illinois Department of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014).

Plaintiff notes that the Seventh Circuit suggested in *Shields* that this issue "deserve[s] fresh consideration" if an opportunity arises in an appropriate case, *id.* at 789, 795-96, and plaintiff reserves the right to revisit the issue in the event of a change in the law, but he concedes that this Court must dismiss Count IV because, as the law presently stands, Wexford cannot be held vicariously liable in an action instituted under § 1983. Count IV is dismissed without prejudice.

## V. COUNT V: INDEMNIFICATION

In Count V, plaintiff alleges that Illinois law requires the state of Illinois to indemnify state employees, such as "one or more Defendants" who may work for IDOC, for any tort judgment they become liable to pay due to any action taken within the scope of their employment activities. (Second Am. Compl. ¶ 80.) The IDOC defendants contend that Count V must be dismissed because it is essentially a claim against the state of Illinois, which is barred by the Eleventh Amendment.[6]

The Eleventh Amendment does not bar claims against state employees in their individual or personal capacities. *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907-08 (7th Cir. 1991); *see Bates v. Wis. Dep't of Workforce Dev.*, 375 F. App'x 633, 636 (7th Cir. 2010) (citing cases). Further, the Seventh Circuit has rejected the argument that a suit against individual state employees is a suit against the state merely because the state is required by its own law to

---

[6] Although the IDOC defendants initially appeared to be making the slightly different argument that this Court lacks jurisdiction, they have either abandoned that argument or clarified in their reply brief that the Eleventh Amendment "is the basis of [their] sovereign immunity argument." (Reply Br. at 4.) In any case, the position that the Illinois Court of Claims Act deprives this Court of jurisdiction is meritless both because the Court of Claims Act "does not apply to federal claims in federal court," *Blewitt v. Mallin*, No. 14 C 5986, 2014 WL 6761655, at *3 (N.D. Ill. Dec. 1, 2014) (citing *Sebesta v. Davis*, No. 12 C 7834, 2013 WL 5408796, at *2 (N.D. Ill. Sept. 26, 2013), and, to whatever extent Count V is a separate state-law claim, the Seventh Circuit appears to have disavowed the position that federal courts may not exercise jurisdiction over such claims, *see Woods v. Cook Cty.,* No. 13 C 2607, 2014 WL 340422, at *3–4 (N.D.Ill. Jan. 30, 2014) (citing *Fields v. Wharrie,* 672 F.3d 505, 518 (7th Cir. 2012) and *Rodriguez v. Cook County,* 664 F.3d 627, 630–32 (7th Cir. 2011)).

indemnify the employees. *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 778-79 (7th Cir. 1991); *see Rubacha v. Coler*, 607 F. Supp. 477, 481 (N.D. Ill. 1985). The Second Amended Complaint clearly alleges that each of the individual defendants from whom money damages are sought[7] is sued only in his or her individual capacity. (Second Am. Compl. ¶¶ 10-18.)

The IDOC defendants argue that sovereign immunity nevertheless bars Count V because plaintiff seeks in Count V to compel the state to pay a judgment, so the state is the "real party in interest." Defendants cite no authority directly supporting this interpretation of the complaint, however, and their reading mischaracterizes the complaint. It is clear from plaintiff's prayer for relief that he seeks no monetary relief from the state directly, and Count V does not make any claims for relief or factual allegations not also made elsewhere in the complaint. Plaintiff merely explains in Count V that the state is required by its own law to indemnify employees such as the IDOC defendants for any judgments that may be entered against them for their part "in committing the misconduct described" in the preceding counts of the complaint. (Second Am. Compl. ¶ 80.) *See* 5 Ill. Comp. Stat. 350/2. In other words, if the IDOC defendants are found liable on the denial of medical care, conspiracy or failure to intervene claims asserted in Counts I, II and III, the state of Illinois must indemnify them or pay any judgment. However, it is clear that the individual defendants will be the ones directly liable for any money judgment.

As a mere legal conclusion that does not correspond directly to any theory of relief, this proposition could have been omitted from the complaint altogether, and pleading it as a separate

---

[7] Gladyse Taylor, who has replaced S.A. Godinez as Director of IDOC, is being sued in her official capacity, but only injunctive relief is sought against her. (*Id.* ¶ 18.) *See Rockford Mem'l Hosp. v. Dep't of Human Rights*, 651 N.E.2d 649, 653-54 (Ill. App. Ct. 1995) ("[W]here a plaintiff is not seeking to enforce a present claim against the State and seeks only prospective injunctive relief, such a suit is not a 'claim against the State' barred by sovereign immunity and may be pursued in [a trial] court. This 'prospective injunctive relief exception' is often invoked where a plaintiff seeks to enjoin a State agency or official from taking actions in excess of his statutory or constitutional authority."). Thus, plaintiff's indemnification count does not apply to her.

count has evidently caused unnecessary confusion. *See Int'l Star Registry of Illinois v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 985-86 (N.D. Ill. 2006) ("Rule 10(b)'s final sentence does not contemplate the use of separate counts to assert a single claim," although "splintering . . . claim[s]" in separate counts has become a "widespread practice."). Nevertheless, Count V consists of relevant legal background to the complaint's substantive claims and factual allegations, and it therefore helps to provide the "framework" of the complaint. *See Iqbal*, 556 U.S. at 664. To dismiss it, even if it makes sense to talk of "dismissing" a count that does not even purport to make a substantive claim, would accomplish nothing. The IDOC defendant's motion to dismiss is denied as to Count V.

## CONCLUSION

For the reasons set forth above, the IDOC defendants' motion to dismiss [44] is granted in part and denied in part. The motion is granted as to Count II but otherwise denied. The Wexford defendants' motion to dismiss [35] is granted. Counts II and IV are dismissed without prejudice. Status hearing set for 10/15/15 at 9:30 a.m.

**SO ORDERED.**

                                                         **ENTERED: August 20, 2015**

                                                  **HON. JORGE L. ALONSO**
                                                  **United States District Judge**